Thank you. You may be seated. Good morning. Our first case for today is number 2023-11184, United States of America, and Alex Doe as the relator, v. Planned Parenthood, Federation of America, Incorporated. And I would let you know that we have a new sound system, and we think it's better than the old sound system, but I would ask you that if you could be a little louder than you think you need to be so that you can be heard by all. Thank you. You may proceed. Thank you, Your Honor. Is that okay? Yes. Okay. Anton Matlitsky for PPFA. I think I've reserved five minutes for rebuttal. May it please the Court. The underlying False Claims Act violation, relator alleges here, is that the affiliate defendants falsely certified that they were eligible to receive Medicaid reimbursement in Texas and Louisiana at a time when federal courts had enjoined the affiliate's termination from Medicaid. Relator's theory against PPFA at issue in this appeal is that PPFA is liable vicariously under the False Claims Act and its state analogs because lawyers in its litigation and law department caused the affiliate defendants to file allegedly false claims by representing the affiliates in court, including in this court, in seeking and obtaining those injunctions, as well as in related state administrative and court proceedings. Now, the law firm of Hush and Blackwell also represented the affiliate defendants in the same litigation, but I don't think anyone would think you could sue them for causing the affiliate defendants to file false claims. Why not? Because the common law doctrine of attorney immunity has long been understood to bar suits based on attorneys representing their clients in court and before administrative agencies. And that same doctrine bars relator's claims against PPFA based on Litton Law's representation of the affiliate defendants as the panel correctly held. Now, the district court disagreed with that for two basic reasons, and each of them we believe is incorrect. First, the court held that the FCA and the state statutes override attorney immunity because they apply to any persons. I think that's clearly wrong under Texas precedent, and it's also wrong under federal and Louisiana law, which both hold that traditional immunities are presumptively preserved by statute. Relator cites several complex federal statutes like the FDCPA and ERISA, which override the common law generally, but the FCA is a common law fraud statute, and there's no basis to construe it as overriding attorney immunity. In fact, the Supreme Court has long held that similar language in Section 1983, which was enacted just eight years after the FCA, does not override common law immunities. The fact that in the 162-year history of the False Claims Act, there's apparently never been a case predicated on attorneys representing their clients in court is strong evidence that such conduct is immune from sanction under the FCA. Second, the district court held that attorney immunity doesn't apply because relator sued PPFA vicariously, not the Litton Law attorneys directly. But if I'm understanding correctly, Relator has abandoned that argument because he agrees that non-law firms like the AARP, Liberty Counsel, and the like, which represent either members or third parties, would have attorney immunity generally, just not under the False Claims Act. His argument instead seems to be that attorney immunity doesn't apply because non-lawyers at PPFA directed Litton Law's representation of the affiliate defendants. There isn't any record support at all for that assertion, but even more important, that was not the basis for the district court's decision. The district court simply held, as a matter of law, that attorney immunity doesn't apply because PPFA is the defendant rather than the attorneys themselves, and because the False Claims Act and its state analogs override attorney immunity. Both those legal propositions are wrong, so this court should reverse. Finally, Relator is wrong that this court lacks appellate jurisdiction. The court's decision in Trois that attorney immunity is an immunity from suit is not only still good law but has been recently reaffirmed by the Texas Supreme Court in Haynes and Boone. And to the extent Relator argues that the court lacks appellate jurisdiction because the appeal doesn't implicate other claims brought by Relator against PPFA, that argument is inconsistent with the Supreme Court's decision in Barrons against Pelletier. And in this court's recent decision in Mi Familia Vota. I welcome the court's questions. Counsel, what claims would PPFA face if you do have the immunity that you're claiming? So there is a separate claim that the Relator brought against PPFA having nothing to do with the Lytton Law lawyer's representation of the affiliates. The claim is based on, if I'm understanding it correctly, a degree of control exercised by PPFA over the Medicaid claim filings by the affiliates. And the theory is that PPFA knew enough because of their exercise of control over the affiliate Medicaid filings that they should have stopped them on the theory that the claims were false. We think that claim fails for a bunch of factual and legal reasons, but none of them are because of attorney immunity, so they're not at issue. So if we agree with you on the immunity issue, we're basically talking about an evidentiary impact, what evidence might be considered on the trial of that claim? No, Your Honor, because the way courts generally define a claim for sort of any purpose, like claim splitting, collateral estoppel, really anything, is one claim derives from a common nucleus of operative facts. So if you plead one cause of action based on two, I guess, nuclei of operative facts, that's two claims, not one claim. And so the claim that has nothing to do with the Litton Law representation and all that, that is one claim. The Litton Law representation is a separate claim, and our theory is just that that separate claim, it's out. Now, they have an argument that that Litton Law-related claim is actually not limited to Litton Law representation of the affiliate defendants, because they say PPFA directed how the litigation would go. But as I said, there is no actual factual support for that, but that's not even, I think, the most important point. The most important point is that, first of all, the district court understood this claim as based entirely on the representation of the affiliate defendants by the Litton Law lawyers and rejected the claim of immunity, not because of some fact dispute, but on the law. And so I think that has a consequence jurisdictionally, because the general rule in collateral order appeals is that the court has collateral order jurisdiction to consider a denial of immunity if the denial of immunity was on the law, and it doesn't have jurisdiction to consider a denial of immunity if a denial of immunity was on the facts. Here, it's the former. And I think it also has really no consequence for this court's ability to consider the merits, because, I mean, I think what the court should do is just say the district court was wrong. The two legal reasons it gave for denying the immunity are both incorrect. Announce the legal rule, which we think should be that attorneys have immunity insofar as the claim is based on representation of their clients in court and the like, and then if you're suing an organization vicariously for the attorney's representation of their clients. What's your best federal case that extends attorney immunity to private counsel? Best federal case? So there are—let me start at the beginning. So I think the federal cases that discuss this historical immunity are cases like Briscoe and Butts, which are about governmental actors. But one is a 1983 case. Another one is a case under Bivens. But one of the main reasons they apply attorney immunity to, for example, prosecutors and witnesses and the like under Section 1983 is that there was what they call the constellation of immunities of common law, which protected against suit any actor in the judicial process, including attorneys. There is a—so that's sort of like the basic historical backdrop. There's a case called Ward from the 1870s in the Supreme Court that says that the general rule is the obligation of the attorneys to the client, not a third party, and so it rejected—this was a general common law sort of pre-eerie suit, but it rejected a suit against a lawyer by a non-client. There are—we cite a few cases in our reply brief because you asked for federal cases. There's a case called Hefferman v. Hunter from the Third Circuit, which holds that attorneys are immune from a Section 1985 case, like a civil rights conspiracy case. One of the cases that my friends on the other side cite, it's called Steffes v. Steppen, which is a Title VII and ADA case, which recognizes that attorneys, private attorneys, are immune and says that Title VII and the ADA in part override the immunity because retaliation claims would be inconsistent with it. And then there are a few state cases—there are a bunch of state cases that apply state immunities to— Could I just interrupt and pick up this, Judge Higginson? Sure. Are you familiar with the Eleventh Circuit's decision of this year accepting collateral order review interpreting Florida law to give an absolute attorney immunity? Are you—called GRIPPA?  GRIPPA. Not familiar? I don't think I am, Your Honor. Okay. Well, I'll ask opposing counsel. Okay. It doesn't seem to be relevant unless—of course, we're looking at different state law for privileges here, but more broadly, similar to Judge Englehart's question, are you aware of any other immunity that federal courts have recognized give non-public parties absolute immunity from suit, appealable under 1291? Non-public parties. Non-public. Well, I think this is probably not an answer to your question, but there's a case in this court called Austin Municipal Securities against the NASD, which we cite in our brief. The reason it probably doesn't answer your question is because the NASD is sort of both. It's a self-regulatory organization, and the conduct in that case involved—it's not governmental function, but it's a self-regulatory function. So I would say that's half an answer, I guess, to your question. But, of course, there's choice and the like from this court holding that attorney immunity itself isn't an immediately appealable collateral. Can I—here's what I don't understand about your theory. Suppose we've got a garden variety wage and hour claim brought by the government against some employer, and the question is whether it's an hourly employee or a supervisor. Garden variety. And the employer says, I relied on my attorneys. Right. Does that mean the employer has immunity? Definitely not. Why not? Because— Why are you arguing anything different? Because the—so I think the analogy to your question here is the affiliate defendants. Their claim against the affiliate defendants is that they filed false claims. I mean, we think those claims are wrong, but their theory is that they filed false claims. They don't rely on attorney immunity because attorney immunity— I know they don't. Right. But PPFA is the employer, and I'm talking about the employer of the counsel, and PPFA is not totally independent. The lawyers are not being sued, so it's not your classic attorney immunity. So tell me another case where a client has been held immune because of the attorney. No, so a client wouldn't be held immune. PPFA was not the client in this case. PPFA is the employer of the—it's like a law firm in the sense that a law firm is being—when a law firm is sued for its attorney's representation of their clients, the law firm has attorney immunity. It's a co-defendant on the basis that allegedly conspired with the affiliate to provide this legal advice. But it wasn't a party below, right? So it wasn't—PPFA itself was not a client of the Litton Law lawyers in the underlying Medicaid termination litigation. Their claim, as I understand it and as the district court understood it, is that— Well, tell me—well, again, I mean this sort of goes back. So it's one thing to say you can't sue attorneys.  And that's why Trois and Candy Hanger and Haynes and Boone and all those are cases directly against attorneys. I do not understand when the person who hires and employs the attorneys gets immunity. I don't see a principle that you're arguing about. So a few points there. So those cases that Your Honor just mentioned, both of them, Candy Hanger and Trois, Trois against Proskauer, were suits against the law firm, not the attorneys. And the reason the law firm has attorney immunity— That's clear. Nobody is arguing that. But you're going beyond the law firm. Right. So second point, they now—my friends on the other side now concede that non-law firms that provide legal services, legal representation to others like—we cite a bunch of them in our brief, but the AARP, Liberty Council— PPFA is not basically a legal entity. But either is the AARP, right? I mean the AARP does a bunch of different things. So does Liberty Council. But one of the things they do is provide legal representation. So now you're arguing—but this is a new theory that you're arguing for. No, I don't think it's a new theory because— We have never recognized attorney immunity for a corporation, have we? This court, no. I mean the cases are pretty rare, and so there's not a case over one where— So there's no court that has ever recognized attorney immunity for a corporation. No, that's not true. And this is not a law firm, right? It's not a law firm. Right. So— Is the structure of the Federation's relationship with the litigation and law group even ethical as principles for professional ethics prevent them from being under the direction of non-lawyers and then hired out to third parties? And that seems to be your theory, that the Federation is no responsibility, in fact, doesn't even have—is not privy to whatever the representation is, that somehow it's in the dark but it's still the employer. How is that an ethical use of law as a non-law firm relationship? I think it's no different, as I understand it, to any other organization that is not a law firm like the AARP, Liberty Council, and the like, where the attorneys that are employed by that corporation would have a privileged relationship with their clients, which means that they wouldn't share information with people who are not their clients. And I wanted to answer your question about the—the prior question about—there is a court—the decision is called Landry's in the Texas Intermediate—Texas Intermediate Appellate Court, which did apply attorney immunity to a non-law firm, and then it went up to the Texas Supreme Court, and the Texas Supreme Court denied the claim of immunity and so didn't consider the question whether the— I have a couple more questions. Relator is clearly alleging that the Federation's litigation and law attorneys are giving business advice to affiliates, not just legal advice. And you know that a lot of times that lawyers at companies, if you do want to treat it like a regular company with a lawyer, that they give business and legal advice and that you can't shroud the business advice in any kind of privilege or anything whenever it's business advice as opposed to legal advice. Well, I don't know that they're alleging that, and that's not the basis—for sure it's not the basis for their theory, but it's not how the district court understood. Well, if the attorney gives business advice to a client, does that immunize everybody—the attorney, the employees, the attorney's corporate employer—for business advice about how to proceed in a structured transaction? No, I wouldn't think that business advice is given by a lawyer is immune at all because it's not legal advice, but the theory here—I can read the district court's encapsulation of the theory if it would help. Well, no, I'm familiar with the district court's encapsulation, but we have to look at actually how it was pleaded and how it was looked at. But I have a jurisdiction—unless you have something further on that. No, no, go ahead. I have a jurisdiction question really quickly. Sure. Following the court's decision in Trois, Texas cases like Taylor v. Tolbert clarified that denial of attorney immunity is an affirmative defense, not immunity from suit. Why should the en banc court not take an opportunity to reconsider our irregulars in Trois and follow the new cases like Taylor and the one by Harvey Brown and the one that collected cases in the Houston First Court on the 14th? Why shouldn't we take the opportunity to clarify this now that we've gotten—we don't have to make such an irregular anymore? So I don't think that's right, Your Honor, with respect. I think the cases that they're relying on held that attorney immunity is an affirmative defense rather than going to the court's subject matter jurisdiction, which is not really—it's sort of neither here nor there. I think there is a Texas—because as Trois itself held, whether something is an affirmative defense determines who has the burden of proof. But, for example, qualified immunity is an affirmative defense. But this isn't qualified immunity. This is immunity for private attorneys, not any sort of immunity for officials. Right. And our jurisdiction to review an order denying immunity on interlocutory appeal has turned in the past on whether the claim of immunity provides a true immunity from suit and not a simple defense to liability. And the Swint case from the Supreme Court has told us that. The Shanks case from our court from some time ago has told us then that. And can you point us to a case law stating that attorney immunity is a true immunity from suit rather than some sort of affirmative defense? Yes, Your Honor. So the Haynes and Boone case from the Texas Supreme Court, which I think was from 2021—this is 631 Southwest 3rd 79. It says the purpose of attorney immunity is alleviating in the mind of the attorney any fear that he or she may be sued by or held liable to a non-client. I think Trois was right that attorney immunity is an immunity from suit. And I absolutely agree with Your Honor that that is the jurisdictional distinction, whether it's an immunity from suit or just a defense against liability. Trois held it was an immunity from suit. I think Haynes and Boone confirms that proposition. And so this court has collateral order jurisdiction to consider. Back to the question of what role the attorneys are playing. At least twice today, you've carefully used the phrase attorneys representing their clients in court. And administrative agency. All right. But in court. So that would mean that if they're not actually representing the clients in court, but they're providing some other kind of business advice, that there would be no immunity. I'm just I'm curious why you stuck the phrase of the clients in court. Sounds right. But why do you do that? Because so the way that common law has developed, the common law sort of branched out from this sort of core of of older cases talking about liability, immunity against liability for lawyers. And some states like Texas have a very, very broad immunity that extends beyond litigation. That's what the Haynes and Boone court. Other states have limited, limited the immunity to litigation. And then, of course, there's the question about what the scope of a federal immunity would be. And it seems to me that the court doesn't have to reach the question whether a federal immunity is more like Texas's or more like Louisiana's, because all of the allegations here are that the lit and law lawyers represented the cause, the filing of false claims by representing the affiliate defendants in seeking federal court injunctions. Arguing the appeals of those injunctions, I mean, Jennifer Sandman from the law department argued in this room before this court and they say that is what about the extent to which the attorneys were doing things other than what you just described. They would not enjoy immunity. Giving advice for filing Medicare, Medicare and Medicaid claims is not necessarily a legal thing. Yes. So to the extent. Correct. I think it's not even adversarial. So that's right. So what the attorneys did here was not legal advice. No, no, no. That's that's not right, Your Honor, because what the attorneys did here was just litigate the underlying termination litigation, including arguing the Kaufman case before this court. Well, if they hadn't advised them to file the claims in the first place, you wouldn't have had litigation. There's the allegation is not that they advise them to follow the claims. The allegation is that they advise them that they had a choice when the termination letters were sent by Texas and Louisiana. They could have gone through the Texas and Louisiana administrative process or they could have sought injunctions under Medicaid. And that's given in that that advice is given in the office. It's not given in pursuit of litigation. And no, because the advice was due litigation instead of going through the administrative process. And then that happened. And that's what they're saying caused the filing of the false claims. And somebody told them to file the claims during a period when they knew they were going to have to be to read. They might have to reimburse money. And we're not saying there's immunity from that. We're saying there's immunity from the theory that the district court articulated as this is this is how the district. But we're not as concerned about what the district court said. We are concerned about what the pleadings are and what they said. So so the pleadings don't talk about that as the district court held that pleadings don't talk about this at all. If you want to see what their theory is on this. Didn't the district court say that it was at least with regard to some of the claims that was responding out superior theory? Yes. It is a respondeat superior theory. If you if you look at the district court stay order at page five, he lays out the theory and they lay out the theory for the first time in their summary judgment brief. You can just read it. It's a 10 3 2 4 to 10 3 3 6 of the record. I'm sorry. I see my I think there might be a couple more questions. And so we'll extend the time for each side by two minutes. On the threshold question of jurisdiction, of course, we do have to look at what the district court. Yes. And I had difficulty seeing that the district court decided conclusively absolute attorney immunity. So when you're looking down, it's late, late in the summary judgment denial. And the district court actually is speaking of a privilege, never uses the word absolute immunity. Right. He doesn't say can't hang or doesn't say choice. Right. So it's pretty hard to see a conclusive determination. So my question is, if we decide there is no conclusive determination on a very difficult but important state law, federal law question, would you retain all your attorney protections under Mohawk for later, whether it's judicial privilege, whether it's advice of counsel or even fleshed out nexus causation, good faith, a full absolute attorney immunity? If this court holds that it doesn't have jurisdiction, the consequence of that is we get to raise everything after a final judgment appeal. But I would just disagree with you. Maybe in between Mohawk says mandamus is available. Or when when when we get to see the contours of what's actually alleged about attorney litigation strategy as fraud, then it may be more clear and conclusively decide your honor. I agree with that taking the premise, but I disagree with the premise because we're we're past discovery. We're past summary judgment. They articulated their theory very clearly. You could look at the ten, three, two, four, two, three, six of the record. And it's a respondeat superior theory based on representation of the affiliate defendants in court. And it's true that the district court used the term litigation privilege, which is sometimes used to describe attorney immunity. It's kind of like confusing how the courts describe it. But the district court expressly reject. We argued that the attorneys are immune and the district court expressly rejected that theory on the ground that if you sue PPFA and not the attorney, they don't have. Is there a world in which there's jurisdiction over Texas claims and not Louisiana privilege? I mean, immunity claims and not federal claims, because, you know, it's the Sixth Circuit has held that an order denying advocacy immunity is not a collateral order subject to interlocutory appeal in the Kelly case. And the Gripa case that you referred to or was referred to earlier was only under state law of Florida, not under federal law. So is there a world in which this is some sort of hybrid appeal and only part of it is jurisdictional or what is your theory on that? I think there's a world, but it's a world with which we disagree. Right. So so the there's clearly jurisdiction unless the court overrules choice, which we don't think it should. As I said, I think it's been sort of affirmed by the Texas Supreme Court. It's clearly jurisdiction over immunity. The Texas appeal, the appeal based on the denial of immunity under Texas law. I'm not sure why it would be any different under Louisiana law, which also has an established immunity. I can imagine the court saying that they're Louisiana law says an interlocutory judgment is appealable only when expressly provided by law. Two of a three C of the Louisiana codes civil procedures article. Right. Under under Louisiana state law, although that's as we cited in our in our reply brief, Louisiana does recognize a collateral order doctrine also. I mean, federal law also says only final orders are appealable. What about the federal? Right. So that's the world that we disagree with. I mean, they say there there is no or I don't know if they say there is no federal immunity. If the court holds there is no federal immunity. I mean, like, I don't know whether that's jurisdictional holding or not. But either way, I think that's clearly wrong. I mean, it would be totally anomalous that every state has has recognized under their common law. Talking about jurisdiction to hear the federal immunity point. Right. So so I think there is jurisdiction to hear the federal immunity point. Absolutely. Why? Well, because because of federal for exactly the reason the panel explained, the federal immunity derives from the common law in the same way that the Texas immunity does. And it doesn't work if it's not an immunity from suit, because it doesn't it doesn't work if attorneys have a fear of being sued by their adversaries for the zealous advocacy that they provide. My question, and I appreciate it. Does anyone else have a question? I think you've saved time for rebuttal and we appreciate. Thank you so much. May it please the court. The outcome of this appeal will not prevent PPFA from standing trial on any claim remaining in this case. PPFA also concedes that relators evidence establishing PPFA liability is not limited to filing a lawsuit. Those two facts demonstrate that the district court was correct to deny PPFA summary judgment. That is the ruling the court is reviewing now. So what exactly is this appeal about? If it's a pretrial effort to restrict what evidence that relator may present to the jury or to simply reduce the conduct that PPFA may be liable for. The proper mechanism is a motion in limine or a jury instruction, not an interlocutory appeal. Indeed, here, jurisdiction is lacking. The only basis PPFA can point to for jurisdiction, this court's decision and choice has been eroded. Texas courts have now held that attorney immunity is only a defense to liability, which would not open the door to an appeal under the collateral order doctrine. Texas and Louisiana statutes also reflect that the defense is not a bar to suit because they do not allow interlocutory appeals for the denial of immunity other than for state officials. It would make no sense for this court's jurisdiction over appeals of the denial of state law immunities to be broader than it is in state appellate courts. Even if this court were to conclude that it has jurisdiction, PPFA's claim to immunity fails on the merits. PPFA cannot point to a single case under federal Texas or Louisiana law that applies an attorney immunity defense in the way that PPFA claims that it applies here. PPFA is thus asking this court to either totally invent or expand immunities to defeat claims for fraud against the government. There is no legal or historical basis for doing so. The district court correctly found that PPFA, a non-lawyer corporation, is not entitled to an unprecedented immunity for its own fraudulent conduct. In any event, PPFA failed to satisfy its burden at summary judgment to conclusively show, as Texas courts require, that all of its conduct was the kind of legal services to which attorney immunity defense applies, with evidence that is not in material dispute. This court has no jurisdiction to decide factual disputes at this juncture. That is for the jury. I welcome the court's questions. Ms. Hacker, suppose, let's take the inverse of this question. Imagine that the state in state court says, we think that the underlying defense is really, really important and gives rise to interlocutory appeals in the state system. Would we be under a concomitant obligation to allow interlocutory appeals of the same state law immunities in the federal system? I think perhaps not, because it seems strange that a state court could expand a federal court's jurisdiction. I tend to agree with that. So why would it matter if the state courts say, we think that this particular immunity, this particular state law immunity, goes the other direction? That is, it's narrower, doesn't allow interlocutory appeals in the state system. What does that have to do with what we do in the federal system? So I think the court could obviously decide. But I would go back to the original point, which is that it would be odd for federal jurisdiction over a state law immunity to be broader than what the state courts allow. And I think another point is that by the state courts not allowing interlocutory appeal of this type of defense, I think that just goes to show that they don't treat it as a immunity to suit. They treat it as a defense to liability, which in this court means there's no collateral order jurisdiction. So it's a combination of the way the state court characterizes its own state law immunity combined with our standard for what would be under, I guess, Mitchell v. Forsyth, a sort of substantial claim of immunity. You put those together and that generates no collateral order doctrine here. I think that's right, Your Honor. Counsel, do you agree? Well, what is your reaction to characterizing that there are two theories of liability, only one of which involves the lawyers and the possible immunity? And regardless of what this court does as to what is before us, it's still the same nucleus of operative facts that will support the other theory? Your Honor, I disagree with the way that my friend characterized that because I don't think that you can neatly sort of take a scalpel and cut out the theory related to litigation conduct as a separate claim. I think that the litigation conduct was one part of an overall corporate strategy, and that corporate strategy is what causes PPFA to be liable under the claims that we have presented. I just want to be clear about this. If this involved a 300-person law firm, not an in-house law firm, would it make any difference? I think that in the case of a law firm, it's quite different because a law firm exists to serve clients. A law firm also doesn't have another entity sort of controlling what it does in its legal representation, which is what the situation is here. Let's just assume that all of the same pleadings had been filed, all of the same briefs had been written, it was just done by outside counsel as opposed to inside counsel. What was it that was said or done that was fraudulent in terms of what was filed, how litigation was handled? If it had been handled by an outside law firm, what about that would have been fraudulent? I think if it was handled by an outside law firm, the piece that would be missing is the corporate strategy piece. Here, PPFA's overall corporate strategy included many different employees of PPFA and many different aspects, but it did include litigation as one part of that. I think that that is what distinguishes it from if it was just filed by a law firm. I don't understand. What about the litigation piece of it was fraudulent? To answer your question, the what about the litigation piece was fraudulent, the overall goal of all of these efforts, including the litigation, was to enable the affiliates to continue filing claims even though they had been disqualified. Well, the courts disagreed for a long time that they were disqualified. I sat on one of the panels. I dissented. But the courts said they were not disqualified for a period of time at least. So, again, I'm having a hard time understanding how there was a fraud on the court or anybody else, depending on whether it was inside or outside counsel. So I would say that this question sort of goes to the merits a little bit, but to explain that, I think there's a distinction between the affiliates being qualified and the affiliates being enrolled or not terminated. So just because the affiliates were not terminated, which is what the injunctions said, that does not mean that that erases the state's administrative conclusion that the affiliates were not qualified under the laws and procedures and regulations of the Texas and Louisiana Medicaid Act. So in terms of filing claims, which is the context we're talking about here, an injunction saying to the state you can't terminate the enrollment of this provider, that doesn't provide air cover over every claim, Medicaid claim, that that provider files. They still are under an obligation to make true statements and to comply with all the certifications that they're required to in order to file that claim. So enrollment and disqualification are not necessarily the same thing. Like Judge Ernst, I'm trying to understand and I searched the summary judge at record to understand how successful lawyering could cause an FCA violation. When that question came up, the district court asked you to discuss the Southern District decision in Adelphi. And if you're familiar with that, I'd like to hear your answer. But more importantly, do you have any case, any FCA case, civil or criminal, that ever attaches liability based on a litigation fraud theory? Can you think of any FCA case that attaches liability based on attorney litigation fraud? No, there is not a case like that that I'm aware of. And as to your other question about the Adelphi case, the summary judgment hearing was a long time ago and I don't remember that case. It's a district court opinion. It sort of goes to that point. There's never been a case where attorney advice is turned into liability. That's true, Your Honor. But I would say that these are pretty unique circumstances here, especially given the way that PPFA is organized, how they have an in-house law department that provides legal advice to the corporate. We are going to make attorney advice liable. Are you familiar with the 11th Circuit's GRIPPA decision? Admittedly, it wasn't interpreting Texas or Louisiana law, but it was interpreting Florida law, and it both accepted appeal and applied absolute attorney immunity. Isn't that correct? I'm not familiar with that case, but I would say that the fact that it involves Florida law is a pretty big distinction because in Texas we know that the courts have held that it is not an immunity to suit. It's just a defense to liability. When you say we know that, are you talking about Taylor and Haynes and Boone? Yes, Your Honor. Were both of those issued after Trois and yet never disclaimed Trois at all? Well, Trois was a decision from this court, so I'm not sure if the Supreme Court of Texas would need Trois. Trois extensively explores the issue, and am I right that both those decisions never mention or in any way question Trois? No, because they were Texas Supreme Court decisions. But they didn't really say that it was immunity from suit. They said it was an affirmative defense. And you heard counsel opposite say that there's language in – I can't remember if it's a court of appeals case or a Supreme Court of Texas case – but it said an attorney should not worry about being sued. So are we splitting hairs here? Are we overreading what the Supreme Court of Texas has ruled? No, I don't think so. And I want to draw the court's attention to those Texas appellate rulings because I think this kind of helps illuminate what's going on here. The Texas courts of appeal did look at all of those decisions, and they agreed that it was an affirmative defense to liability and not a jurisdictional bar to suit. Now, I know that in PPFA's reply brief they discussed the fact that, well, just saying it's a jurisdictional bar, that doesn't mean it's an immunity to suit. But what I think is important to clarify here is that in Texas courts, that's what they're talking about. So under federal law, an immunity to suit doesn't necessarily have to be jurisdictional in a 12v1 sense, as this court just held in McRaney. But under Texas law, as the 14th court stated in the NFTD case on page 554, an immunity from suit defeats a trial court's subject matter jurisdiction and is properly asserted in a plea to the jurisdiction, which is a motion to dismiss for lack of subject matter jurisdiction under the Texas rules of civil procedure. So, in other words, when the first and 14 courts of appeal held that attorney immunity is not a jurisdictional bar to suit, what they're saying is it's not a true immunity to suit, which is contrary to this court's eerie guess. Well, it's not immunity. It's like sovereign immunity, but Texas has the equivalent of qualified immunity, and that is an immunity from suit under Texas law. That's true, Your Honor, and that immunity is defined by statute. There's no statute here that says anything about attorney immunity. I'm just saying your terminology is not on point with great respect. Immunity from suit does not have to be like sovereign immunity to be also immunity that's subject to certain exceptions. I mean, it doesn't deprive the state court of jurisdiction. Well, I think that the conclusion that the that Texas courts aren't looking at this as an immunity to suit is supported when you look at Texas statute. So Chapter 51.014 of the Texas Civil Practice and Remedies Code only permits an allocatory appeal from the denial of summary judgment based on the assertion of immunity by a state official. So Texas law, whether you're looking at the court opinions or whether you're looking at the statutes, it just doesn't treat attorney immunity as an immunity to suit. And as I said before, it doesn't if it doesn't permit an allocatory appeal of the denial of that immunity in its own courts, there shouldn't be collateral order doctrine or collateral order jurisdiction in this court. Assuming argument that there is jurisdiction, the claims are not all respondeat superior claims, are they? No, that's that's right, Your Honor. I think that PPFA has tried to paint this as we're talking about these independent lawyers that just filed a lawsuit and we're trying to tag PPFA with liability. But that is really not the case here. PPFA, we allege, are the ones that drove the whole strategy. The litigation was one piece of it, among other pieces. PPFA was in charge of that strategy and implemented it with the affiliates. And the goal was to keep submitting claims. What's the strategy? Is it in the record that the strategy is to coordinate with the federation's executives, media representatives and lobbyists and get their help in writing a letter requesting a grace period from the state from a false purpose? Is that is that part of is that in the record or is that something that someone's just made up? So that is in the record, Your Honor, and there's there's a document in the record that is an example of this, and I think it encapsulates all of what I'm talking about here very well. It's in the record at two forty seven, 14 to 16. It's in the sealed record, so I won't quote from it, but it's an email to the national or to the executive leadership team of PPFA. The affiliates are not part of this email. Is that an adversarial context that Haynes and Boone case discusses? Is anything we've just been talking about an adversarial context to which attorney immunity would apply? The filing of claims is not an adversarial context. In writing a letter requesting a grace period and doing all of that, is that an adversarial context? It shouldn't be because we're talking about filing claims. And as Texas has argued, I think very well, the filing of claims cannot be an adversarial context because the person filing the claims or anyone associated with them has an obligation under the law to turn square corners with the government and be honest with the claims that they're filing. And so those two parties, the government and the person filing the claims, are not supposed to be opposed. That would sort of eviscerate the whole contract that these providers have with the state in providing the services. Help me here on back to immunity. Assume it's immunity from suit, but does this operate similar to like qualified immunity? In other words, if there are factual disputes about what these lawyers did and didn't do and who did what and who directed what and all that sort of thing, would we not lack jurisdiction to review those disputes? I mean, in other words, would we have jurisdiction if there were even if it were immunity from suit? I think that's a very good point, Your Honor. And I think that there are factual disputes as to what the lawyers were doing, who who were they representing there. There are a lot of disputes about that. And I think you're right in saying that the court would not have jurisdiction to be determining all of those factual disputes and this posture. And the reason why is, as you mentioned, in the qualified immunity context, the court doesn't have jurisdiction to resolve factual disputes. It's only if it's a legal issue. What factual disputes are there before this court's decision in Kaufman? I'm sorry, I don't think I understand. What factual disputes are there in this case about what happened in the litigation before up to the time the court entered its en banc decision in Kaufman? So I think the factual disputes I'm referring to relate to what the what the litigation and law lawyers were doing, what the scope of their representation was. What are those disputes? Be specific. What are the factual disputes? Yes, well, it's the it's the well, I mean, I think for one thing, as my friend mentioned earlier, they're claiming that PPFA was not Litton Law's client. That is factually disputed. I think what factual disputes did the district court identify as a basis for denying immunity? Well, the district court, the district court identified many factual disputes on the claims that which which was why it denied summary judgment and said that we needed to go to the jury. The district court also pointed out all of the facts that we allege about PPFA's other involvement that didn't have to do with lawyers. But on the precise issue of the lawyer immunity that the district court held that, as I think the court has recognized that there's no there's there's no precedent. Like PPFA didn't connect the dots between asserting attorney immunity for attorneys who aren't defendants and turning that into like a corporate immunity defense. I still have a basic question that I don't have an answer to. What was done in the in the litigation, all the litigation that preceded our judgment on court judgment in Kauffman that was fraudulent, that was illegal, that was anything but turning square corners with the government that was not permissible under the court rulings as they stood until our decision. What was the speech on? Yes. What was illegal was when the affiliates continue to file claims asserting that they were qualified providers when Texas and Louisiana had determined that they were not qualified providers and the affiliates did not challenge those distinctions in the administrative record. So you're saying the fraudulent piece was going to federal court first without pursuing administrative remedies. So the fraudulent part, I'm not trying to resist your question, but I just want to make clear that the context we're talking about here is filing claims. Right. And that's why I think I would go back again to what I said earlier about the just because the terminations were enjoined does not mean that they were qualified as a matter of state law. They were not qualified as a matter of state law. So if you submit claims saying you're qualified when you're not, those are implied false certifications. If an outside law firm had said you're perfectly within your right to forego administrative remedies and file court in federal suit, would there be liability for that advice? Would PPFA still be liable for fraudulent claims? So are you asking if a private law firm was involved whether PPFA would be liable? Yes. If that private law firm had done exactly what happened here, which is instead of pursuing administrative appeals, they went directly to federal court and got injunctions against being terminated, would PPFA have liability for fraud if outside law firms had done that? So I think that would be different than this situation because here PPFA controlled what the litigation and law lawyers did. Well, if they asked their outside counsel to do it, and the outside counsel said fine, we'll do it, and they had done that, what is fraudulent about that? So again, I think that would be different because if the outside lawyers were just acting as a lawyer representing a client, that's different than what we have here where the corporate entity is controlling its own employees, the litigation and law lawyers, and telling them to do things that was part of an overall corporate strategy. But don't clients in any context always control what their counsel is going to do? Yes, they should. But there's evidence here that the affiliates were not necessarily in the driver's seat all the time in terms of what their lawyers were doing. PPFA was. Counsel, the lawyers, whether employed by PPFA, litigation department, or private counsel, have the same ethical obligations. Getting back to Judge Richman's series of questions, it seems to me whether these lawyers were doing something that was fraudulent, that was unethical as well, applies equally to wherever they sit. PPFA's litigation department or a private law firm, they can't be controlled if the lawyers are doing what they're actually required to do, to do fraudulent things. So I guess if the private law firm was doing something that met the definition of a fraudulent act under the statute, then it could be liable. So I think that's what we have to think about here is what the action is that violates the statute. We allege that PPFA is liable here, not the attorneys, PPFA, because PPFA orchestrated a strategy to enable the affiliates to continue filing false claims. So you're saying you're not bringing any respondeant superior type claims against PPFA? I think that perhaps some of them could be respondeant superior, but we're arguing… The district court thought some of them were. Yes, but we are arguing direct liability, PPFA through its officers… And I agree that you have some direct liability claims, but some of your claims are respondeant superior claims. In other words, you're attaching liability to PPFA based on the actions of attorneys, lawyering. Among other employees, yes. So I guess I wanted to go back really quick to this document that I was talking about in the record that I feel like encapsulates a lot of this, the one at 247.14. So it's an email to the executive leadership team from a senior vice president. It doesn't involve the affiliates at all. It discusses the fact that this is an organization-wide effort, an all-hands-on-deck effort. Again, this is just about PPFA. It mentions the legal aspect of this as well as a bunch of other aspects involving other departments of PPFA. And interestingly, it again pushed back on the idea that PPFA was not a client of the litigation and law department. In this document here, there are numerous parts that are redacted for privilege. So there was obviously an attorney-client relationship here if they're redacting things here for privilege. I'd also point out on that point as well that a PPFA lawyer admitted at page 25,030 in the record that litigation and law represents both PPFA and affiliates in legal matters that concern the shared mission of PPFA and the affiliates to ensure the provision of medical services. So again, it is a disputed fact as to whether PPFA is a client. We think that the evidence here shows that they are, and we would ask the court to affirm and send us back to the trial court. Thank you. Thank you. Thank you. May it please the court. William Peterson on behalf of the state of Texas, a plaintiff in the proceeding below but an amicus in this appeal. My point is simple but important. Under Texas law, attorney immunity does not bar claims under the Texas Medicaid Fraud Prevention Act because the submission of Medicaid claims is a non-adversarial context in which attorney immunity would not apply under Haynes and Boone. Judge Richmond, you asked about what was fraudulent in the litigation. And I think what's helpful to do is look here at the elements of the claims under the Texas Medicaid Fraud Prevention Act, knowingly concealing or failing to disclose information that permits a person to receive a benefit under the Texas Medicaid program, knowingly causing to be made the making of a false statement or misrepresentation of material fact pertaining to the Texas Medicaid program, conspiring to violate the Texas Medicaid program. Now, as I understand my friend's argument, it's that L&L attorneys didn't do any of that. It's that they, like an outside law firm, simply represented the PPFA affiliates in court. That's not an immunity defense. That's an attack on the merits of the claims. If these elements of the TMFPA claim can be proven as to attorneys or as to non-attorneys, then the attorneys were representing the clients in a non-adversarial situation and a situation in which attorney immunity wouldn't apply as a matter of Texas law. The whole point of the False Claims Act, on which the Texas Medicaid Fraud Prevention Act is based, is to ensure that those who seek money from the public fisc act with scrupulous regard for the requirements of the law, that men must turn square corners when they deal with the government. Judge, more broadly, just from Texas's standpoint, does attorney immunity in Texas law mean immunity from suit, as we described in Troy's yes or no? Or would you want us, at most, to certify that question at this point? Judge Higgins said it's a complex answer because this is a circumstance in which Texas procedure and federal procedure don't map squarely to each other. When you look at Texas cases, Texas cases discuss immunity to suit in the context of sovereign immunity and talk about immunity to suit as a limitation on the court's subject matter jurisdiction. So the federal concept of a right to avoid suit that is not a question of subject matter jurisdiction isn't a question that Texas courts address because that's not quite a concept that Texas courts need to address as a matter of Texas procedure. Now, what I will say is I think my friend, Ms. Hacker, is absolutely correct. The right place to look here, because Texas courts don't need to address the federal right in the federal sense, is the Civil Practice and Remedies Code to see whether Texas actually believes that this right is important enough to allow private parties to avoid standing trial. And when you look at Civil Practice and Remedies Code 51.014, subsection 5 allows assertions of immunity by individuals who are officers or employees of state government to appeal the denials of summary judgment on an interlocutory basis. Governmental units have the right to appeal denials of pleas to the jurisdiction under subsection 8, but not private attorneys asserting immunity. Do you have an opinion when you say the federal concept of being able to avoid suit? Are you aware of any federal case that has extended that to a non-public party that is absolute immunity? Choice, of course. No, other than absolute attorney immunity. Any other immunity to a non-public party? Are you talking about attorney immunity specifically or more general concepts? Can you think of any immunity as to non-public parties other than the uncertainty we have as to attorney immunity? I believe this court's religion clause cases may recognize some type of immunity exception for those rights. I'm sorry. I need to look. I don't have it off the top of my head. I certainly, as a general matter without committing to state, recognize the importance that there are some rights that are not jurisdictional that do need to be protected from standing suit. It is critical to the state that we retain our right to appeal denials of official immunity under the collateral order doctrine. But I think certainly if you look at Texas state law, Texas hasn't viewed private attorney immunity denials as an issue that would warrant interlocutory appeal in the state system. Unless the court has questions. Thank you, Your Honor. Just a few points. First on the question of factual disputes. My friend on the other side says there are factual disputes that they are raising now. This theory was articulated for the first time in a motion for summary judgment by them. Their argument was that there was no dispute of material fact and that P.P.F.A. was liable on this theory based on the litigation that preceded Kaufman and related adversarial proceedings. And you can read their articulation of the theory with no mention of disputed facts, of course, at 10.324 to 10.336 of the record. That's their brief, but as encapsulated by the district court, just quoting their briefs concerning the implied false certification claims. Who later argues that P.P.F.A.'s in-house litigation attorneys in their Litton Law Department masterminded and orchestrated a strategy to enable the affiliate defendants to continue to seek reimbursement from Texas and Louisiana Medicaid. That strategy involved the L&L department steering affiliate defendants away from the administrative process into lengthy legal battles. That is the underlying termination litigation that ended up in Kaufman. That was their theory below. That is the theory that the district court was responding to. Now, Your Honor mentions now they say there are disputes of fact. Doesn't that undermine the court's jurisdiction? But as Judge Ramirez said, the question is not whether they raise disputes of fact now. The question is what was the basis for the district court's decision? The district court decision didn't recognize any disputes of fact, perhaps because they said there were none. One case that I can cite, there are a bunch of them, is Stedman against the Texas Rangers 179 F3rd 360, which says that appellate jurisdiction is proper under the collateral order doctrine where the district court's ruling was based on an issue of law. Even the existence of disputed facts does not preclude review where the district court's action was based on the law. So I think that's a complete answer there. As to my friend on the other side, Texas, we're not saying that the submission of Medicaid claims is an adversarial proceeding or subject to attorney immunity. We're saying that the theory of liability having to do with the litigation law department is all about adversarial proceedings. It is literally the litigation that ended up in the Kauffman decision. That's adversarial. It was preliminary injunction hearings. It was arguments before this court three times. All of that is adversarial. It falls squarely within attorney immunity. And finally, Judge Oldham, because I can't resist on the collateral order doctrine. The question whether something is final is a question of federal law under Section 1291. It seems to me that it doesn't matter at all what the state court says. Either way, I practice a lot in New York. You can appeal everything. That doesn't mean that that has any effect on whether something is final under the collateral order test. What matters is whether it satisfies the criteria under Section 1291 that the Supreme Court has articulated. However, the state court views the kind of order, whether in state court it's appealable or not, because the state court can have different finality rules. The finality rule that matters is the federal finality rule. And under the federal finality rule, I think it's well established that immunities from suit, as opposed to mere defenses against liability, are collateral orders. And as to whether the Texas rule, attorney immunity rule, is a defense from suit, I mean, I just think the Texas Supreme Court said that expressly. The point is alleviating in the mind of the attorney any fear that he or she may be sued. I don't think there's any ambiguity about that. Thank you, Your Honor. Thank you. This case is submitted. The court will take a brief recess before considering the next case. To be here.